**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRUCE H. MASON,**

         Petitioner,

  -vs-                                              01-CR-376

**UNITED STATES OF AMERICA,**

         Respondent.
_____

**Thomas J. McAvoy**, U.S.D.J.

**DECISION & ORDER**

**I. Introduction**

    Petitioner Bruce H. Mason has filed a motion pursuant to FED. R. CRIM. P. 33 to vacate his convictions and/or for a new trial on the ground of the discovery of new evidence.

**II. Background**

    On October 28, 2002, following a bench trial, Petitioner was convicted on fifteen of the seventeen counts under which he was indicted, including arson and bank fraud. On September 23, 2003, Petitioner filed his first Rule 33 motion, claiming that he had discovered new expert reports that would alter his culpability. This Court denied that motion on October 20, 2003. In December of that year, Petitioner was sentenced to fifteen years imprisonment.

1

The Second Circuit affirmed Petitioner's conviction on December 17, 2004.  See United States v. Mason, 118 Fed. Appx. 544 (2d Cir. 2004).

Petitioner has brought a second Rule 33 motion, claiming that he has discovered new evidence regarding one of the government's witnesses and the conduct of the prosecutor.  Petitioner has filed lengthy motion papers with the Court, alleging sixteen newly-discovered facts in support of his motion.  These facts, however, can be condensed into two issues: (1) whether one of the government's witnesses recanted his testimony; and (2) whether the government committed misconduct in its prosecution of Petitioner by making secret promises to a witness and suppressing evidence.

Petitioner claims that one of the government's witnesses, Gary Edison, recanted his testimony.  According to Petitioner, while Edison was in prison serving several felony sentences, he told Fred Gage and David Ferris that neither Edison nor Petitioner committed arson, but that he (Edison) confessed to the crime (which, in turn, implicated Petitioner), to strike a deal with the government.  Gage and Ferris each claim to be mere business acquaintances of both Petitioner and Edison.  Petitioner claims that Edison's recantation of his testimony is supported by several facts, such as Edison's abuse of illegal drugs and the fact that, during Edison's state court proceedings, he had written a letter to the state court judge admitting that he makes false confessions.

2

Petitioner also claims that the victim of some of Edison's crimes, David Kapur, stated that Edison admitted to Kapur that the government struck a deal with Edison whereby Edison would not be prosecuted for his crimes against Kapur due to his involvement with Petitioner's case.  Kapur also states that he was initially unable to have state officials prosecute Edison for his crimes against Kapur because of the secret deal Edison had with the government. Kapur states in his affidavit that, before Petitioner's trial, he spoke to Edison and Edison informed him that Edison would not be prosecuted for the crimes Edison committed against Kapur due to Edison's cooperation with the government in Petitioner's case. Petitioner claims this secret deal is a violation of Brady v. Maryland, 373 U.S. 83 (1963).  Petitioner also alleges that Edison and the government committed perjury, because both denied, at trial, that any promises had been made to Edison for his cooperation and that the government allowed Edison to falsely testify as to several facts regarding his past convictions, thereby suppressing evidence from Petitioner.

**III. Standard of Review**

Rule 33 allows for the court to grant a new trial "if the interests of justice so require."  FED R. CRIM. P. 33.  If the trial was a bench trial, "the court may . . . vacate the judgment, take additional testimony, and direct the entry of a new judgment." Id.  "A Rule 33 motion for a new trial based upon previously -

3

undiscovered evidence is ordinarily not favored and should be granted only with great caution." United States v. Gallego, 191 F.3d 156, 161 (2d Cir. 1999) (internal quotation marks and citations omitted). Generally, relief is only afforded if such "evidence could not have been discovered, exercising due diligence, before or during trial, and that evidence is so material and non-cumulative that its admission would probably lead to an acquittal." Id. The ultimate test is whether allowing Petitioner's verdict to stand would amount to a manifest injustice, due to a "real concern that an innocent person may have been convicted." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001).

**A. Edison's Recantation**

Petitioner claims that, because Edison has recanted his testimony, his Rule 33 motion should be granted. "Courts are particularly reluctant to grant such motions where the newly discovered evidence consists of a witness recantation as such recantations are looked upon with the utmost suspicion." United States v. DiPaolo, 835 F.2d 46, 49 (2d Cir. 1987) (citations and internal quotation marks omitted).

Here, there is insufficient evidence that Edison has, in fact, recanted. Petitioner relies on the affidavits of two allegedly disinterested parties, Gage and Ferris. Both men state that Edison recanted his testimony to them while they visited Edison in prison.

4

Gage first met with Edison, apparently at Edison's request, over a year after Edison entered prison and only after Petitioner was found guilty by this Court and had filed his first Rule 33 motion. Furthermore, Gage and Ferris both expressly claim in their affidavits that, while they know both Petitioner and Edison, they have nothing more than a business relationship with the two. This raises serious questions as to why these are the people to whom Edison allegedly chose to recant. Given the circumstances of the visits to Edison and the heightened scrutiny involved in the evaluation of any witness recantation, Edison's alleged recantation is dubious at best.[1]

Most damaging to Petitioner is the lack of an affidavit or any direct evidence that Edison actually recanted his testimony. "The failure of a defendant to produce or explain the absence of an affidavit of a recanting witness may be sufficient grounds for denying a motion for a new trial." Id. at 50 (citing United States v. Ward, 544 F.2d 975, 976 n. 2 (8th Cir. 1976) (per curiam)). Petitioner claims that, due to the fact that both he and Edison are in prison, it has been difficult to obtain an affidavit from Edison

---

[1] Further doubt is cast on these allegations by the fact that Gage alleges to have visited Edison in prison in late 2003 and early 2004. Yet, Mason did not present this information to the Court until mid 2005 and Gage did not prepare his affidavit until January 2005. The same holds true for Ferris. Moreover, Petitioner has failed to identify any reason Gage or Ferris would have had for visiting Edison in jail.

5

stating that he has recanted his testimony.[2]  However, Petitioner's motion was first filed in June 2005 and Petitioner, with the assistance of his wife, has filed several supplemental memorandums in support of his motion.  These lengthy documents all have two central allegations: misconduct by the government and the recantation of Edison's testimony.  It follows that such an important factor in Petitioner's motion would have, and should have, been demonstrated by now.  Moreover, this Court purposefully allowed Petitioner additional time to obtain an affidavit from Edison.  To date, no such affidavit has been forthcoming.  Because Petitioner has been given adequate time to produce an affidavit or statement from Edison stating that he has recanted his testimony, he cannot claim that Edison has recanted his testimony.[3]

**B. Alleged Brady Violation**

Petitioner claims that the government suppressed key information regarding Edison's prior convictions, thereby violating Brady v. Maryland, 373 U.S. 83 (1963).  "[T]he Government's failure to disclose evidence that is materially favorable to the defense violates due process."  United States v. Rivas, 377 F.3d 195, 199

---

[2] This contention is belied by the fact that Edison has been out of prison since approximately March of 2005, before Petitioner filed the instant motion.

[3] The Court further notes that there is evidence that Gage and Ferris visited Edison while he was incarcerated at the Tioga County Jail.  The government contends, however, that it had a meeting with Edison on August 23, 2005 wherein Edison "said that on each occasion that Gage visited Edison, Edison told Gage that he (Edison) was hired by Mason to start the fire. . . ."

(2d Cir. 2004) (citing <u>Brady</u>, 373 U.S. at 87).  To violate <u>Brady</u>, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).  "Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.'" <u>Rivas</u>, 377 F.3d at 199 (quoting <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir.1998)).  To be material in the <u>Brady</u> analysis, the non-disclosure of the evidence must create "a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case (citing <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)), or would have put the case in such a different light as to undermine confidence in the outcome."  <u>Rivas</u>, 377 F.3d at 199 (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 434-35 (1995).

   Petitioner has failed to demonstrate a <u>Brady</u> violation.  Petitioner's situation is much like that of the petitioners in <u>United States v. Wong</u>, 78 F.3d 73 (2d Cir. 1996).  In <u>Wong</u>, the petitioners claimed that the government intentionally failed to disclose the testimony of one of the witnesses in a previous trial.  <u>Id</u>. at 79.  The testimony in question showed that the witness "received a tidy and regular income over a period of several years for serving as an informant, and . . . his cooperation in ongoing

7

drug investigations may have earned him favorable treatment by the Immigration and Naturalization Service . . . ." Id. Although the government conceded that the transcripts should have been disclosed as Brady material, it argued that they were not material to the outcome of the trial because that petitioner's "credibility was called into question by the defense in cross-examination, and therefore that the further evidence eroding his credibility would have been merely cumulative." Id. The district court and the Second Circuit agreed, holding that "defense counsel had sufficient ammunition concerning [the witness'] mendacity, interest, and bias as to justify the . . . conclusion that the undisclosed impeachment evidence in the . . . transcripts was cumulative." Id. at 80.

Here also, Petitioner's counsel had enough information to call into question the validity and confidence of Edison's testimony, including his criminal history and his propensity to make false allegations, as evidenced by the note Edison wrote to the state court judge. As in Wong, the fact that no information was proffered by the government regarding any alleged deal between Edison and either the United States government or the State of New York does not make this undisclosed impeachment evidence non-cumulative, because there were enough facts present at trial to call Edison's credibility into question. This Court was, and is, well aware of the many reasons to disbelieve Edison's testimony, including his criminal history. Accordingly, due to its cumulative

8

nature, this cannot serve as a basis for Petitioner's motion and its alleged suppression does not meet the standards imposed by Brady.

Furthermore, in denying Petitioner's first Rule 33 motion, this Court stated that it was not only Edison's testimony that was convincing, but also the other circumstantial evidence against Petitioner, including evidence that he had disabled the security and fire prevention measures at the building.  Therefore, it is unlikely that further impeachment evidence would have altered this Court's decision.

Petitioner also argues that the government allowed Edison to proffer perjured testimony, which unduly influenced the court's decision.  Once again, this issue is similar to Wong.  In Wong, one of the petitioners claimed that the government knowingly allowed a witness to commit perjury when the witness claimed that he "'always did [his] taxes," and had filed a tax return for 1988.  Id. at 82.  The petitioner claimed that the government knew, or should have known, that this was perjurious, because that witness had testified in previous trials that he had not paid any income tax in 1987.  Id.  The district court assumed that the government knew the testimony was perjurious when made, but still denied petitioner's motion.  Id. at 81-82.  The Second Circuit agreed, holding that "[t]he additional evidence concerns a collateral issue [the witness' taxes], and 'd[oes] not refute any of [the witness']

9

testimony against' [the petitioner]." Id. at 82 (quoting United States v. Reyes, 49 F.3d 63, 68 (2d Cir. 1995)). Furthermore, the witness' testimony was adequately impeached at trial during cross-examination. Wong, 78 F.3d at 82. Therefore, the Second Circuit found that this new evidence "'is the sort of cumulative impeachment material that is routinely held insufficient to warrant a new trial,' (quoting United States v. White, 972 F.2d 16, 22 (2d Cir. 1992), cert. denied, 506 U.S. 1026 (1992)) because it does not 'undermine the confidence in the verdict.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

In the present action, even assuming that the government knowingly sat idly by while Edison perjured himself at trial regarding his criminal past, such information was a collateral issue that did not impact Edison's testimony regarding Petitioner. At best, that testimony went to Edison's credibility, which could have been, and indeed was, attacked by Petitioner's counsel during cross-examination. Thus, this Court agrees with Wong, in that the testimony Petitioner believes was suppressed by allegedly allowing Edison to perjure himself at trial was cumulative in nature, and does not undermine the Court's confidence in the verdict.

Finally, Petitioner relies heavily on Giglio v. United States, 465 U.S. 150 (1972). Petitioner asserts that Giglio mandates a new trial here because it holds that new impeachment evidence is material in cases involving a single, uncorroborated witness.

10

Giglio involved a situation where "the Government's case depended almost entirely on [the witness'] testimony," without which there would have been no indictment and no evidence to carry the case. Id. at 154.  Here the government proffered other evidence implicating Petitioner, including physical evidence and other government witnesses.  In addition, evidence that Petitioner took steps to disable the security and fire prevention measures for the building, which was referenced by this Court in Petitioner's first Rule 33 motion to be as important in its decision to find Petitioner guilty, also shows that Petitioner's guilt was not based entirely on Edison's testimony.  Therefore, because Edison's testimony did not stand alone in proving Petitioner's guilt, Giglio is distinguishable.

**C. Jury Waiver**

Finally, Petitioner claims that, had the government disclosed all of the evidence Petitioner claims was suppressed, Petitioner would not have waived his right to a jury trial.  Accordingly, Petitioner claims that his waiver of the right to a jury trial was invalid.  Criminal defendants enjoy the right to a trial by jury under the United States Constitution.  U.S. CONST. amend. VI. Constitutional rights may be waived, but "'[a] waiver of a constitutional right must be voluntary, knowing and intelligent, that is, the act of waiver must be shown to have been done with awareness of its consequences.'" United States v. Canady, 126 F.3d

11

352, 359 (2d Cir. 1997) (quoting <u>United States v. Morgan</u>, 51 F.3d 1105, 1110 (2d Cir. 1995), <u>cert. denied</u>, 516 U.S. 861, 116 S. Ct. 171, 133 L.Ed.2d 112 (1995)); <u>see also</u> <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Given that a plea of guilty is "a waiver of [the] right to trial before a jury or a judge," analysis from the area of guilty pleas is helpful. <u>Id</u>.

In <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), the United States Supreme Court was called on to determine whether the Sixth Amendment requires "federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose 'impeachment information relating to any informants or other witnesses.'" <u>Id</u>. at 625. The Court found that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." <u>Id</u>. at 629 (emphasis in original). The Court realized that the more information a defendant has, "the more aware he is of the likely consequences of a . . . waiver . . ., and the wiser that decision will likely be." <u>Id</u>. However, the government is not required by the Constitution to share all useful information with the defendant. <u>Id</u>. A waiver is "knowing, intelligent, and sufficiently aware if the defendant

fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it." Id.(emphasis in original).  The Supreme Court noted that "[i]t is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant.  This is because the value of impeachment information is random in helping out a criminal defendant, because the degree that such information will help the defendant depends on the defendant's knowledge of the government's case, which the Constitution does not require the government to disclose."  Id. at 630.

Petitioner is only claiming that impeachment information regarding a single government witness would have altered his decision to waive his right to a jury trial.  Given Ruiz and Brady, such information has little bearing on whether Petitioner's decision to waive his constitutional right was invalid.  "[T]he Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver for various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  Id. (defendant "misapprehended the quality of the State's case")(citing Brady, 397 U.S. at 757).  Furthermore,

13

Petitioner was afforded the advice of counsel on this matter and had a "full opportunity to assess the advantages and disadvantages" of a jury trial. Brady, 397 U.S. at 754. Several times, this Court questioned Petitioner whether he understood the consequences of his decision, and if said consequences were explained to him by his counsel. Petitioner stated that he understood the consequences of his decision. This, coupled with the apparently competent representation at trial, demonstrates that Petitioner's waiver was knowing, intelligent, and voluntary, because he was aware of the consequences of his decision.

Finally, Petitioner's bases for this theory rests on several assertions, none of which are supported by any evidence, but instead on unsupported allegations and Edison's so-called recantation to third parties, which, as stated above, is dubious at best. Such conclusory allegations cannot show that his waiver of a jury trial was not valid.

**E. Motion to Produce and Preserve Evidence**

Petitioner also has filed a motion to produce and preserve certain evidence, and has attached corresponding subpoena requests for such evidence. Most of these requests involve information that is not newly-discovered evidence. The subpoena requests largely involve: 1) evidence to impeach Edison, which the Court has determined to be cumulative and not material; 2) evidence to show "secret dealings" by the government, which, even if true, the Court

14

has determined not to be a Brady violation (see Wong, 78 F.3d at 79-80); and 3) evidence, such as bank and business records, that, with due diligence, Petitioner could have discovered before or during trial. Therefore, Petitioner's motion regarding these subpoenas is denied.

## V. Conclusion

For the reasons stated above, Petitioner's motion pursuant to FED R. CRIM. P. 33 and his request for subpoenas are **DENIED**. The Clerk of the Court shall close the file in this matter. Any additional filings shall be treated as a motion pursuant to 28 U.S.C. § 2255. In that regard, Defendant is advised to review 28 U.S.C. § 2255, the applicable time limits, and the limitations on second or successive motions.

Dated: October 20,2005

_Thomas J. Mc Avoy_
Thomas J. McAvoy
Senior, U.S. District Judge

15